IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jerry Lynn Welty,                        :
               Plaintiff,                       Civil Action 2:12-cv-0776
                                      :
     v.                                         Judge Frost
                                        :
Carolyn W. Colvin, Acting                     Magistrate Judge Abel
Commissioner of Social Security,   :
               Defendant.
                                        :

**REPORT AND RECOMMENDATION**

Plaintiff Jerry Lynn Welty brings this action under 42 U.S.C. § 405(g) for review

of a final decision of the Commissioner of Social Security denying his application for

Social Security Disability Insurance Benefits.  This matter is before the Magistrate Judge

for a report and recommendation on the parties' merits briefs.

**<u>Summary of Issues.</u>**  Plaintiff Jerry Lynn Welty maintains that he became

disabled on September 9, 2008, at age 46, due to diabetes, numbness in feet and hands,

depression, anxiety, hypertension, osteoporosis, ketoacidosis, and cracked vertebrae in

lower back.  (*PageID* 200.) He was last insured for Social Security disability benefits

December 31, 2009.

The administrative law judge found that through December 31, 2009 Welty

retained the ability to perform a reduced range of jobs having light exertional demands.

In addition, he could perform only low stress jobs involving no production quotas and

not required a fast pace. Plaintiff argues that the decision of the Commissioner denying

benefits should be reversed because:

The administrative law judge's residual functional capacity finding fails to assign proper evidentiary weight to:

1. The testimony of plaintiff;

2. The medical source opinions of treating primary care physician, Robert Santiago, M.D.;

3. The consultative record reviewing physicians of the Bureau of Disability Determination, Dr. Thomas and Dr. McCloud;

4. The evaluation of mental limitations from depression and anxiety;

5. The credibility finding regarding plaintiff's symptomatic complaints and fails to apply legal criteria equally to the Commissioner's physicians under SSR 96-2p, 20 CFR §404.1527(d), and by the administrative law judge acting as a medical expert.

**<u>Procedural History</u>.**  Plaintiff Welty protectively filed his application for disability insurance benefits on January 15, 2009, alleging that he been disabled since September 9, 2008.  (*PageID* 171-75.)  The application was denied initially and upon reconsideration.  (*PageID* 121-22, 124-27.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (*PageID* 138-39.)  On January 28, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (*PageID* 58-71.)  A vocational expert also testified.  (*PageID* 71-75.)  On May 19, 2011, the administrative law judge issued a decision finding that Welty was not disabled within the meaning of the Act.  (*PageID* 32–48.)  On June 25, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (*PageID* 18-21.)

2

**Age, Education, and Work Experience.** Plaintiff Welty was born in 1961 and was 46 years old on the alleged disability onset date. (*PageID* 171, 195.)  He has a high school education with one year of college. (*PageID* 204.)  He has past relevant work experience as a material handler and painter in a car manufacturing factory. He last worked in 2004. (*PageID* 201.)

**Plaintiff's Testimony.**  The administrative law judge summarized Welty's testimony as follows:

> The claimant testified that he is 72 inches tall and weighs 200 pounds.  He lives with his wife and two children, ages 14 and 17.  He drives occasionally, but his mother brought him to the hearing.
>
> The claimant testified that he needs some assistance in grooming and hygiene tasks and, at times, does not feel like doing those things.  He said he does not do much around the house and spends his days sitting or laying down.  He said he naps daily because his pain interrupts his sleep at night.  He said he leaves the house four or five times a week.
>
> The claimant alleges disability due to diabetes, neck, and right hand problems as well as depression.  The claimant testified that he takes insulin shots four times a day.  He said his blood sugar levels go up and down. He said his diabetes has caused blurred vision, tingling in his feet and hands, and headaches.  He said he can have headaches every day and lasting from one to two hours or all day.  He said he also has to take frequent breaks to use the bathroom.  The claimant testified that he has cervical spine disease and had surgery on his neck.  He said that ever since that surgery he has had difficulty using his right hand.  No additional surgery has been mentioned.  He said he takes over-the-counter medication for pain, but it does not help.  The claimant testified that he has mild carpal tunnel syndrome in his right hand and he is right handed. He said he has difficulty picking things up and lifting.  The claimant testified that he is depressed, anxious, easily irritated and angry, and has a low opinion of himself.  He said he is not interested in eating, does not want to socialize, and wants to stay alone.  He said he has "brain glitches" every day where he starts to think and then goes blank.  He said he has

3

> trouble concentrating, focusing, and remembering the past.  He said he
> has not had counseling because he does not have the money.  His family
> physician prescribes his medication.
>
> The claimant testified that he can walk one block and sit for 20 to 30
> minutes.  He said he can lift only 10 pounds and cannot lift anything
> above his waist.

(*PageID* 34-35.)

**<u>Vocational Expert's Testimony</u>.**  In addition to plaintiff, a vocational expert, Mark Pinti, testified at the administrative hearing.  (*PageID* 71-75.)  He classified Welty's past jobs as a material handler of car parts, car manufacturing and painter in the same factory as medium, semi-skilled work.  (*PageID* 72.)  The administrative law judge proposed a series of hypotheticals regarding Welty's residual functional capacity to the vocational expert.  (*PageID* 72-73.)  Based on his age, education, and work experience and residual functional capacity, the vocational expert testified that there were 8,000 light exertional jobs and 5,000 sedentary exertional jobs in the regional economy which plaintiff could perform.  (*PageID* 73.)  The vocational expert further testified that his testimony is consistent with the *Dictionary of Occupational Titles* (DOT).  (*Id.*)

When cross-examined by plaintiff's counsel, the vocational expert testified that if the restriction that Welty could not operate machinery with foot controls was added to the residual functional capacity, the light exertional jobs would be reduced to 5,000, but the sedentary exertional jobs would remain the same.  (*PageID* 74.)  The vocational expert confirmed that if plaintiff was absent three times a month or was off task 20% to 25% of the day, he would not be able to maintain employment.  (*PageID* 74-75.)

**Medical Evidence of Record.**[1]  The relevant medical evidence of record is summarized as follows:

**Physical Impairments.**

<u>Riverside Methodist Hospital</u>.  A cervical spine MRI taken in April 2005, showed severe cervical stenosis at C4-5 due to a disc herniation and a C5-6 disc herniation. (*PageID* 253-54.) Welty underwent a C5 vertebrectomy with C4-6 fixation/fusion on May 17, 2005, followed by physical therapy.  (*PageID* 249-52, 489.)

<u>Robert Santiago, M.D.</u>

The record before the administrative law judge showed plaintiff treated with his primary care physician, Dr. Santiago, from March 21, 2006 through at least October 12, 2010.  (*PageID* 323-37, 352-72, 383-512.)  Dr. Santiago's progress notes show that Welty injured his lumbar spinal area in 2000 while at work. Records also show that in 2004 he was diagnosed with another work-related injury involving cervical herniated disks and degenerative disc disease.  Plaintiff further suffered a cervical compression fracture in June 2008.  Welty suffered from arthritis of the cervical area, uncontrolled diabetes, peripheral vascular disease, hyperlipidemia, hypertension and depression, insomnia,

---

[1]The record contains additional medical evidence including records from Robert Santiago, M.D. from 2011, Novasom, a MRI report from October 2006, and a psychological evaluation report Paul Deardorff, Ph.D.  (*PageID* 636-78.). That evidence was not before the administrative law judge.  Rather, plaintiff submitted it to the Appeals Council.  However, since the Appeals Council denied plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of the administrative law judge's decision.  *Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

impotence, metabolic syndrome, general anxiety syndrome, diabetic foot neuropathy, chronic pain syndrome and osteoporosis.  Dr. Santiago's notes also indicated that Welty experienced unconsciousness during his hospitalization for the ketoacidosis.  He further noted that Welty reported memory impairment, episodes of confusion, and lack of concentration following this hospitalization.  Welty was taking several medications prescribed by Dr. Santiago, including Insulin, Coreg, Zetia, Exforage, Lisinopril, Cymbalta, Effexor, Catapress, Metformin, Boniva, Januvior, and Vitamin D.  (PageID 323-37, 352-72, 383-512.)

In February 2009 and June 2009, Dr. Santiago completed questionnaires for the Bureau of Disability Determination.  (*PageID* 259-61, 339-41.) In June 2009, Dr. Santiago listed Welty's diagnoses as insulin dependent type II diabetes, peripheral vascular disease, diabetic neuropathy, cervical disc herniation and radiculopathy, chronic pain syndrome after cervical diskectomy, hypertension, hyperlipidemia, depression, anxiety, osteoporosis, compression fractures, lumbar back pain, degenerative disc disease, arthritis of the cervical spine.  (*PageID* 340.) Dr. Santiago opined that Welty's diabetes is "very brittle" and his blood sugar values fluctuate.  (*PageID* 341.)  Dr. Santiago conclud- ed that Welty is disabled by multidimensional limitations resulting from the complexity of his condition, he is only marginal in terms of functionality, and his severe limitations in sitting, standing, walking, bending, stooping, and lifting are due to his chronic pain, neuropathies, and cervical problems.  (*Id.*)

Dr. Santiago completed a Multiple Impairment Questionnaire on Welty's behalf in July 2009.  (*PageID* 342-49.) Dr. Santiago opined that Welty was limited to: standing/walking and sitting for one hour of any eight-hour workday with frequent changes of position; lifting up to l0 pounds; moderate limitations with bilateral grasping, turning, and twisting of objects and in bilateral fine manipulation; and marked limitation with bilateral reaching (including overheard).  He also opined that Welty would need a 15 minute break every thirty minutes and likely would to be absent more than three times a month due to impairments or treatment.  He said that Welty could not tolerate even "low stress" at work.  Dr. Santiago concluded that the "complexity of all his conditions" prevented plaintiff from working and earning a living.  (*PageID* 261, 348, 512.)

A cervical EMG in July 2009, showed chronic right C5 radiculopathy, acute right C6 radiculopathy, and multiple level paraspinal irritation but no myopathy.  (*PageID* 365.)  Nerve conduction studies in July 2009, showed bilateral carpal tunnel syndrome superimposed on peripheral neuropathy.  (*PageID* 363-64.)

Due to Welty's complaints of right sided neck pain with his history of fusion surgery, Dr. Santiago ordered x-rays of Welty's cervical spine in June 2010, which showed the previous anterior fusion with normal disc space and open exit foramina.  (*PageID* 576.)  Lumbar spine x-rays showed mild diffuse chronic degenerative changes with well-maintained disc spaces and no spondylosis.  (*PageID* 577.)

William O. Smith, M.D.  On March 24, 2009, Dr. Smith performed a disability evaluation examination of Welty for the Bureau of Disability Determination.  (*PageID*

267-73.)  Welty's chief complaints were diabetes, neck and back pain.  Upon exam-ination, Dr. Smith found restricted cervical range of motion, normal muscle strength in all upper extremity muscle groups along with normal grasp, manipulation, pinch, and fine coordination, but decreased touch sensation in a glove distribution in both hands. (*PageID* 268-69.)  Dr. Smith diagnosed Welty with post-op anterior discectomy and fusion cervical region; lumbar spondylosis; diabetic sensory neuropathy, upper and lower extremities; hypertension essential, benign; hyperlipidemia; and symptom mag-nification and Waddell's signs[2].  (*PageID* 269.)  Dr. Smith concluded that Welty

> was found to have adult onset diabetes with complications of diabetic sensory neuropathy.  He suffered a low back injury in 1999 and a neck injury in 2004 for which he had surgery in 2005.  He still has neck and arm pain especially with neck motion.  There is some evidence of symptom magnification and positive Waddell's signs on exam.  He does have restriction in range of motion of his neck and low back and evidence of sensory neuropathy in his upper and lower extremities.  Needless to say he suffers from a bad attitude.

(*PageID* 269.)

     <u>Leigh Thomas, M.D./W. Jerry McCloud, M.D.</u>  In April 2009, state agency reviewing physician, Dr. Thomas, opined that Welty could perform a range of light work with the additional limitations of never balancing or crawling; limited lifting above the shoulder; limited fingering with the right hand; and avoid all exposure to vibrations, hazardous machinery and unprotected heights.  (*PageID* 316-19.)  Dr. Thomas adopted the prior administrative law judge decision from September 11, 2008

---

[2]A group of physical signs that may indicate a non-organic or psychological component to chronic low back pain. http://en.wikipedia.org/wiki/Waddell's_signs (June 11, 2013).

under AR 98-4 (*Drummond* Ruling). (PageID 316.) Dr. Thomas found that Dr. Santi-ago's conclusion that plaintiff could not work was not supported by objective data. (*PageID* 321.) Another state agency reviewing physician, Dr. McCloud, affirmed Dr. Thomas' opinion in September 2009. (Page ID 351.)

      <u>Memorial Hospital of Union County.</u> Welty presented to the emergency room on July 26, 2010, for diabetic ketoacidosis following three days of nausea, vomiting, and diarrhea. (*PageID* 515-75.) The emergency room physician noted that associated chest pain is more suspicious for dyspepsia reflux than acute coronary syndrome. (*PageID* 520.) plaintiff began seeing a diabetic specialist, Trisha Zeidan, M.D., following this hospitalization. (*PageID* 587-612.)

      **Psychological Impairments.**

      <u>John Reece, Psy.D.</u> On March 16, 2009, Dr. Reece performed a disability evaluation examination of Welty for the Bureau of Disability Determination. (*PageID* 262-65.) Plaintiff reported that he was receiving counseling services. (*PageID* 262.) Mental status examination revealed well-organized speech with no evidence of thought problems, inconsistent and poor eye contact, a constricted affect with minimal facial and gestural expressions, mildly anxious/dysphoric/irritable, no evidence of psycho-motor agitation or retardation, no hallucinations or delusions, satisfactory concentration and task persistence but with poor immediate memory, and with good insight and judgment. (*PageID* 262-64.) Dr. Reece diagnosed Welty with depressive disorder and assigned Welty a Global Assessment of Functioning ("GAF") score of 60, indicating

mild to moderate symptoms.  Based on the clinical examination, plaintiff was "estimated to be functioning no lower than the low average range . . . ." (*PageID* 264.)

Dr. Reece opined that Welty's mental ability to relate to others, including fellow workers was moderately impaired by his depressive disorder and based on his performance in the evaluation.  Welty reported no problems with coworkers or supervisors on the job in the past.  Welty was estimated to be functioning no lower than the low average range, based on his performance.  He reported no problems following instructions on the job in the past.  His ability to maintain attention, concentration, persistence and pace to perform repetitive tasks was mildly impaired and his ability to withstand the stress and pressure associated with day-to-day work activity was moderately impaired by his depressive disorder.  (*PageID* 265.)

Karen Steiger, Ph. D.  After reviewing the record on April 11, 2009, Dr. Steiger, a state agency psychologist, found plaintiff was mildly limited in his activities of daily living and in maintaining social functioning and moderately limited in maintaining concentration, persistence, and pace.  Plaintiff had no episodes of decompensation. (*PageID* 289.)

Dr. Steiger adopted the prior administrative law judge decision from September 11, 2008 under AR 98-4 (*Drummond* Ruling).  (*PageID* 277, 291.)  Dr. Steiger concluded, "ALJ decision notes [claimant] "lacks the capacity to do other than low stress jobs (i.e., no jobs involving fixed production quotas or otherwise involving above average pressure for production, hazards, or work that is other than routine in nature), or follow

10

complex instructions." (*PageID* 277.)  On September 7, 2009, state agency reviewing psychologist, Kristen Haskins, Psy.D. affirmed Dr. Steiger's assessment.  (*PageID* 350.)

Glenn A. Feltz, Psy.D.  Dr. Feltz performed a disability evaluation examination of plaintiff Welty on April 15, 2009.  (*PageID* 293-96.)  Dr. Feltz found Welty to be alert and oriented, with logical but tangential thought processes, variable speech tone reflecting many mood and affective states, showing an intense dysphoric mood with anger and general distress, restless and fidgety, and unimpaired immediate and long-term memory but poor short-term memory with poor concentration.  (*PageID* 294.)

MMPI testing yielded scores consistent with symptoms of apathy, fatigue, anxiety and depression. At times those symptoms might be overwhelming. A pre-occupation with somatic complaints may be frequent and intense. Medical stress was likely a factor in some of his psychological symptoms. He was likely to be seen as withdrawn, introspective, unpredictable and moody. Dr. Feltz concluded that the MMPI results indicated "Welty was suffering form significant depression and anxiety that was likely exacerbated and/or caused by his current physical problems." (*PageID* 295.)

Dr. Feltz concluded that Welty was suffering from significant depression and anxiety that was likely exacerbated and/or caused by his current physical problems. The negative impact of his physical problems on his lifestyle and daily functioning had created or exacerbated psychological distress.  His depression, anxiety, and worry could be expected to grow and his physical symptoms may worsen as a result.  It appears his

symptoms also included dissociative signs and obsessive thinking consistent with

post-traumatic stress disorder.  Problems with insomnia, anger control, poor con-

centration, forgetfulness, panic attacks, social withdrawal and suicidal thinking would

be expected from his results.  Some psychotic symptoms or episodic

fragmented thought may be noted with such high levels of symptom severity.  At these

times, Welty's suicide potential may by very high.  The severity of these results indi-

cated a critical level of need and likely functional incapacity.  It is unlikely that Welty

could perform work beyond a superficial level (i.e. housework, small or short term

projects).  In spite of antidepressant therapy, the severity of symptoms appeared very

high.  Dr. Feltz opined that until these symptoms can be brought under control,  Welty

likely cannot work effectively and safely in a full time job for at least a year. (*PageID*

295-96.)  Dr. Feltz diagnosed Welty with major depressive disorder recurrent, severe,

with mood-congruent psychotic features, post-traumatic stress disorder, pain disorder

associated with both psychological and medical conditions, adjustment disorder, and

personality disorder and assigned him a GAF score of 50.  (*PageID* 296.)

Dr. Feltz also completed an impairment questionnaire as part of his evaluation

of Welty.  (*PageID* 374-81.)  According to Dr. Feltz, Welty is mildly limited in his mental

abilities to: understand and remember very short and simple instructions; perform

activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances; ask simple questions or request assistance; be aware of normal

hazards; take appropriate precautions; and to travel in unfamiliar places or use public

transportation.  Dr. Feltz opined that Welty was moderately limited in his mental abilities to: understand and remember detailed instructions; sustain an ordinary routine without special supervision; make simple work-related decision; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others.  Dr. Feltz found Welty was markedly limited in his mental abilities to: carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (*PageID* 377-79.) Dr. Feltz concluded that Welty was incapable of coping with even low stress and would likely be absent from work more than three times a month.  (*PageID* 380-81.)

    **Administrative Law Judge's Findings.**  The administrative law judge found that:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of September 9, 2008 through his date last insured of December 31, 2009 (20 CFR 404.1571 *et seq.*).

13

3.　　Through the date last insured, the claimant had the following severe impairments: diabetes mellitus; residual effects of cervical fusion in 2005; mild right carpal tunnel syndrome; depression; and anxiety (20 CFR 404.1520(c)).

4.　　Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.　　After careful consideration of the entire record, the [administrative law judge] finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: no  climbing ladders, ropes, or scaffolds; no work around hazardous machinery; no crawling; no reaching above shoulder level or constant fingering; unskilled work; and low stress, defines as no assembly-line production quotas and not fast-paced.

6.　　Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.　　The claimant was born on September 25, 1961 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.　　The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.　　Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.　　Through the date[] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from September 9, 2008, the alleged onset date, through December 31, 2009, the date last insured (20 CFR 404.1520(g)).

(*Page ID* 35-48.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "more than a mere scintilla."  (*Id.*)  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "take into account whatever in the record fairly detracts from its weight." *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff contends that the administrative law judge's residual functional capacity finding is not supported by "substantial evidence on the record as a whole" and contrary to law.  Within this contention of error, Welty argues the administrative law judge failed to assign proper evidentiary weight to the opinion

15

of plaintiff's treating physician, Dr. Santiago; improperly weighed the opinions of the state agency reviewing physicians, Dr. Thomas and Dr. McCloud; substituted her own medical judgment in place of the medical source opinions; and failed to properly evaluate Welty's credibility and testimony. (Doc. 7).

**Analysis.**

Treating Doctors' Opinions. Plaintiff argues that the administrative law judge erred in rejecting the opinions of Dr. Santiago.

Treating Physician: Legal Standard. A treating doctor's opinion[3] on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record. *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). The Commissioner's regulations explain that Social Security generally gives more weight to a treating

---

[3]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.*, the error is *de minimis*. *Wilson*, 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 404.1527(d)(2) but does not technically meet all its requirements. *(Id.) See, Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013).

doctors' opinions because treators are usually "most able to provide a detailed, longi-tudinal picture" of the claimant's medical impairments.  20 C.F.R. § 404.1527(d)(2).  When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight."  (*Id.*)

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. §423(d)(1)(A).  Consequently, a treating doctor's opinion does not bind the Commis-sioner when it is not supported by detailed clinical and diagnostic test evidence.  *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[4].

---

[4]Section 404.1527(a)(1) provides:

You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  *See* §404.1505.  Your impairment must result from anatomical, physiological, or psychological ab-normalities which are demonstrable by medically acceptable clinical and lab-oratory diagnostic techniques.  *See* §404.1508.

17

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1).  When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  20 C.F.R. § 404.1527(d)(2).

When the treating source's opinion is well-supported by objective medical evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p.  *Gayheart v. Commissioner of Social Security*,  710 F.3d 365, 375 (6th Cir. 2013).  The Commissioner's regulations require decision-makers "to provide 'good reasons' for discounting the weight given to a treating-source opinion. [20 C.F.R.] § 404.1527(c)(2)."[5]  *Gayheart*, 710 F.3d at 375.

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions. Social Security Ruling 96-2p.  It emphasizes:

1.  A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2.  Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3.  Controlling weight may not be given to a treating source's medical

---

[5]Section 404.1527(c)(2) provides, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

opinion unless the opinion is well-supported by medically acceptable
clinical and laboratory diagnostic techniques.

4.   Even if a treating source's medical opinion is well-supported, controlling
     weight may not be given to the opinion unless it also is "not inconsistent"
     with the other substantial evidence in the case record.

5.   The judgment whether a treating source's medical opinion is well
     supported and not inconsistent with the other substantial evidence in
     the case record requires an understanding of the clinical signs and
     laboratory findings and what they signify.

6.   If a treating source's medical opinion is well-supported and not incon-
     sistent with the other substantial evidence in the case record, it must be
     given controlling weight; *i.e.*, it must be adopted.

7.   A finding that a treating source's medical opinion is not entitled to
     controlling weight does not mean that the opinion is rejected. It may
     still be entitled to deference and be adopted by the adjudicator.

The focus at this step is solely on whether the treating-source opinion is well-supported

by objective medical evidence and not inconsistent with other substantial evidence.  In

making this determination the factors for assessing the *weight* to give to the medical

opinions of any medical source, 20 C.F.R. § 404.1527(c), are not used.  These come into

play only when there are good reasons not to give the treating-source opinion control-

ling weight.  20 C.F.R. § 404.1527(c)(2)[6]; *Gayheart*, 710 F.3d at 376.

---

[6]Section 404.1527(c)(2) provides, in relevant part:
If we find that a treating source's opinion on the issue(s) of the nature and
severity of your impairment(s) is well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not inconsistent with
the other substantial evidence in your case record, we will give it controlling
weight.  When we do not give the treating source's opinion controlling weight,
we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as
well as the factors in paragraphs (c)(3) through (c)(6) of this section in determ-
ining the weight to give the opinion.

If there are good reasons to find that the treating-source opinion is not controll-ing, then the decision-maker turns to evaluating all the medical source evidence and determining what weight to assign to each source, including the treating sources.[7] The Commissioner's regulations require the decision-maker to considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.  20 C.F.R. § 404.1527(c)(1) through

_____

(Emphasis added.)

[7]Even when the treating source's opinion is not controlling, it may carry sufficient weight to be adopted by the Commissioner:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and lab-oratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weigh-ed using all of the factors provided in 20 CFR 404.1527 and 404.1527.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

(6). Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled. 20 C.F.R. § 404.1527(e).

The case law is consistent with the principals set out in Social Security Ruling 96-2p. A broad conclusory statement of a treating physician that his patient is disabled is not controlling. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). Even when the Commissioner determines not to give a treator's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2). *Wilson*, 378 F.3d at 544; *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). There remains a rebuttable presumption that the treating physician's opinion "is entitled to great deference." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007); *Hensley*, above. The Commissioner makes the final decision on the ultimate issue of disability. *Warner v. Commissioner of Social Security*, 375 F.3d at 390; *Walker v. Secretary of Health & Human*

21

*Services*, 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

<u>Treating Doctor: Discussion</u>. When weighing the opinions of Dr. Santiago as to Welty's physical limitations, the administrative law judge determined:

> When evaluated under [20 C.F.R. § 404.1527(d) and (f) and Social Security Ruling 96-2p], the conclusions of treating physician Dr. Santiago cannot be given controlling or even deferential weight. His conclusions are neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with substantial evidence in the case record. The only plausible explanation for his pessimistic assessment of claimant's functional capabilities is that such assessment was based on an unquestioning acceptance of claimant's subject complaints. . . . There are no diagnostic tests or affirmative clinical findings that are consistent with the limitations imposed by Dr. Santiago. The most recent x-rays showed only mild diffuse chronic degenerative changes with well-maintained disc spaces and no spondylosis. EMG studies showed peripheral neuropathy apparently from the claimant's diabetes, but he uses his hands, arms, legs, and feet to perform activities of daily living, walk, and drive. [sic] Furthermore, Dr. Santiago's opinion appears to be based, at least in part, on an assessment of impairments outside his area of expertise. The doctor is not an orthopedist, neurologist, or endocrinologist, physicians whose opinions would be more persuasive. Moreover, the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy the patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case. Additionally, Dr. Santiago's opinion is not supported by his own treatment notes. The opinion evidence of Dr. Santiago has been weighed and considered in accordance with the criteria set forth in 20 C.F.R. § 404.1527 as well as Social Security Rulings 96-2p, 96-5p, and 06-03p. It is found that this

opinion evidence is not entitled to any special weight under the facts and circumstances of this particular case.

(*PageID* 42.) Having rejected Dr. Santiago's opinion evidence, the administrative law judge next found that the opinions of the Bureau of Disability Determination non-examining physicians Dr. Leigh Thomas and Dr. W. Jerry McCloud that Welty could perform light work were entitled to "great weight because they are not inconsistent with the evidence" regarding his physical abilities. (*Id.*) The administrative law judge further found that clinical findings and Welty's testimony supported a finding that he could perform light work:

> The claimant has reported many subjective complaints without clinical findings. Though the claimant has been diagnosed with diabetic neurop-athy and reported a lack of vibration sensation in both legs, he showed no ataxia and his positional sense was normal. He showed restricted lumbar range of motion but full strength in his lower extremities and no radicu-lopathy. He walks without the need of an assistive device. The record contains no evidence of treatment of his right carpal tunnel syndrome. Moreover, despite the alleged problems with his neck and hands, he is able to perform his own hygiene, assist with some household chores, and drive. A residual functional capacity assessment for light exertion does not appear unreasonable when viewed within the context of the entire record.

(*PageID* 43.)

With respect to Dr. Santiago's opinion as to Welty's mental impairments, the administrative law judge stated:

> Robert K. Santiago, M.D., the claimant family physician, said the claimant is severely limited in his ability to relate to others, concentrated, and think clearly and cannot tolerate stress (Exhibits 2F at 4, 12F at 4, 13F at 6, and 22F at 6). The doctor's opinion appears to rest on an assessment of impair-ments outside his area of expertise. Dr. Santiago is not a psychiatrist or licensed psychologist and, therefore, is not considered an acceptable med-

23

> ical source to evaluate the effect of the claimant's mental impairments
> with regard to the above functional areas (SSR 06-03p).  Furthermore,
> when viewed within the context of the entire record, it appears highly
> improbable that the claimant experienced "severe" limitation due to
> mental impairment at any time.  Nevertheless, even if he experienced past
> episodes of psychological symptom exacerbation
> approaching the level of severity described by Dr. Santiago, any such
> episodes would have resulted in hospitalization, something which has
> never occurred.  Consequently, the conclusions of Dr. Santiago relating to
> the severity of the claimant's mental impairment are given no weight
> and rejected as being less than credible when evaluated under the
> guidelines of 20 CFR 404.1527 and 416.927.

(*PageID* 39.) The administrative law judge also discounted the opinion of Dr. Feltz

because he had no treatment relationship with Welty and his "interpretation of the

claimant's examination results are potentially invalid (Exhibit 14F)." (*Id.*) The

administrative law judge gave "great weight" to the opinions Bureau of Disability

Determination reviewing psychologists Karen Steiger and Kristen Haskins that Welty

could perform routine, low stress tasks with no fixed production quotas, above-average

pressure, and complex instructions "because they are not inconsistent with the evidence

and represent a credible estimation of the claimant's work-related mental abilities."

(*PageID* 44.)

    Decision. The administrative law judge's decision lumps together two separate

analysis of a treator's opinions. The first inquiry is whether the treator's opinion is well-

supported by objective medical evidence and is not inconsistent with other substantial

evidence. 20 C.F.R. § 404.1527(c)(2). *Gayheart*, 710 F.3d at 375. If the administrative law

judge finds good reasons to conclude that the treator's opinion is not supported by

objective medical data or is inconsistent with other substantial evidence, she must then

consider what weight to attach to the opinion using the factors set out in 20 C.F.R. §
404.1527(c). *Gayheart*, 710 F.3d at 376.

Although the administrative law judge did identify several good reasons to
conclude that Dr. Santiago's opinion was not supported by objective tests, her analysis
failed to mention several test results that tended to support his opinion. These include a
July 2009 cervical EMG that showed chronic right C5 radiculopathy, acute right C6
radiculopathy, and multiple level paraspinal irritation but no myopathy (*PageID* 365)
and July 2009 nerve conduction studies that showed bilateral carpal tunnel syndrome
superimposed on peripheral neuropathy.  (*PageID* 363-64.) An administrative law
judge's statement of good reasons to reject a treator's opinion should fairly set out both
the evidence supporting and undermining that conclusion.

The administrative law judge's analysis of Dr. Santiago's opinions about Welty's
depression and anxiety summarily assert that they are not credited because he is not a
psychiatrist or a psychologist. However, he had treated Welty's depression and anxiety
for a period of years. The administrative law judge's decision makes no reference to that
treatment. Dr. Santiago prescribed Cymbalta and Effexor for the depression. (*PageID*
355) Dr. Santiago's treatment notes frequently include the assessment of depression.
(*E.g., PageID* 323, 326, 328, 334, 335, 337, 355, 423 and 424.) At times Welty is said to be
very depressed. (*E.g., PageID* 334, 335 and 337.) In June 2009, Dr. Santiago reported to
the Social Security Administration that Welty's depression was severe, and it interfered
with his treatment. (*PageID* 340-41.) While Dr. Santiago is not a psychiatrist or psych-

25

ologist, he is a physician who is competent to diagnosis depression and prescribe medication for it. Moreover, he is the only medical source who had a longitudinal picture of Welty's treatment and the effects of his depression. The administrative law judge's analysis did not acknowledge that fact in her rather summary dismissal of his opinions.

Accordingly, reviewing the administrative law judge's opinion in light of *Gayheart*, the Magistrate Judge finds that the administrative law judge did not use the required two-step analysis of a treating doctor's opinion and failed to expressly consider all the evidence supporting Dr. Santiago's opinion when rejecting it.[8]

Conclusions. For the reasons set forth above, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **REMANDED** to properly evaluate the medical source opinions of Dr. Santiago under the legal criteria set forth in the Commissioner's Regulations and Rulings, and as required by case law.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. r. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District

---

[8]Because of this conclusion and the recommendation that the case be remanded, an in-depth analysis of plaintiff's remaining challenges to the administrative law judge's decision will not be undertaken.

Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


s/Mark R. Abel
United States Magistrate Judge